In the Matter of Revocation of Catering Club Liquor License No. CC-949, Issued to—The Mount Carmel Legion Memorial Association. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

Argued December 12, 1980, before Judges WILKINSON, JR., WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*J. Leonard Langan,* Assistant Attorney General, with him, *Kenneth W. Makowski,* Acting Chief Counsel, and *Edward Biester, Jr.,* Attorney General, for appellant.

*Robert B. Sacavage,* for appellee.

OPINION BY JUDGE WILKINSON, JR., February 12, 1981:

This is an appeal from an order of the Court of Common Pleas of Northumberland County reversing a license suspension order by The Pennsylvania Liquor Control Board (Board). We reverse and remand to the trial court for findings of fact and conclusions of law.

The Board issued Citation No. 449, 1979, against the appellee (Club) in which it was alleged that on February 9 and 10, 1979 the Club sold liquor to non-members of the Club without prior arrangement for such services. Section 406(a) of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-406(a), provides in pertinent part:

> Every hotel, restaurant or club liquor licensee may sell liquor and malt or brewed beverages ... for consumption only in that part of the hotel or restaurant habitually used for the serving of food to guests or patrons, and in the case of hotels, to guests, and in the case of clubs, to members, in their private rooms in the hotel or club. No club licensee nor its officers, servants, agents or employes, other than

one holding a catering license, shall sell any liquor or malt or brewed beverages to any person except a member of the club.

Section 5.83(a) and (b) of the Board's regulations, 40 Pa. Code §5.83(a), (b) provides:

(a)   Catering, for the purpose of this section, means the furnishing of liquor or malt or brewed beverages, or both, to be served with food prepared on the premises or brought onto the premises already prepared, for the accommodation of groups of nonmembers who are using the facilities of the club by prior arrangement, made at least 24 hours in advance of the time for private meetings or functions, such as dances, card parties, banquets, and the like; and which is paid for by such nonmembers.

(b)   A record shall be maintained showing the date and time catering arrangements were made, the name of the person or organization making the arrangements, and the approximate number of persons to be accommodated.

At the hearing on the citation, an enforcement officer testified that between 11:30 p.m. February 9, 1979 and 12:25 a.m. February 10, 1979 he went inside the Club's premises and purchased four drinks, that while he was there and made the purchases he was not questioned as to his membership in the Club, that he is not a member of the Club, and that he had not made any prior arrangements to come to the Club. In no way did the Club's witnesses contradict the testimony of the enforcement officer. After the hearing, the Board entered an order on July 18, 1979 suspending the Club's liquor license for ten days.

The Club appealed to the court of common pleas, which conducted a de novo hearing on September 18, 1979. By agreement of both counsel, the transcript of the hearing before the Board was admitted into

evidence. The Board rested its case. The Club's attorney voiced an objection in the form of a demurrer to the evidence, contending that no evidence was brought that prior arrangements had not been made. He then introduced evidence from two witnesses. The court sustained the demurrer to the evidence and the Club's appeal from the suspension order. The appeal to this Court by the Board followed.

Section 471 of the Code, 47 P.S. §4.471, says in part that "[u]pon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court." This has been interpreted to mean that:

> Pursuant to this section the lower court on appeal is required to hold hearings *de novo*, make its own findings of fact and conclusions of law and then in the exercise of *its own* discretion either sustain, reverse, or modify the action taken by the Board. The court is in no way limited either by statute or by case authority to a review of the Board's discretion, but rather makes a completely independent determination of all facets of the case in rendering its own decision. The only limitation placed upon the court is in the area of imposing penalties when no material changes are made in the findings of the Board.

*Noonday Club of Delaware County, Inc. Liquor License Case*, 433 Pa. 458, 467, 252 A.2d 568, 573 (1969). (Emphasis in original.) "Our scope of review in liquor license revocation cases is limited to determining whether the court below committed an error of law or abused its discretion." *Pennsylvania Liquor Control Board v. Latrobe Armed Services Association*, 16 Pa. Commonwealth Ct. 199, 201, 329 A.2d 549, 550 (1974).

In the instant case the trial court has failed to carry out its duty to make findings of fact and conclusions of law. Without these it had no authority to reject the Board's action in suspending the Club's license for ten days. There is no provision in the law by which the trial judge can substitute sustaining a demurrer in the place of making findings.

Accordingly, we must enter the following

### ORDER

AND Now, February 12, 1981, the order of the Court of Common Pleas of Northumberland County, docketed to Misc. No. 79-87, dated September 18, 1979, is reversed and the record is remanded for the trial court to make proper findings of fact and conclusions of law on the issue of whether the Club sold liquor and/or malt or brewed beverages on the licensed premises to a person who was not a member of the Club without prior arrangement for such service.